IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN EVANS,

                Plaintiff,                    OPINION AND ORDER

   v.

                                                     20-cv-574-wmc

PAUL BRAATZ,

                Defendant.

---

In this lawsuit brought under 42 U.S.C. § 1983, a former State of Wisconsin employee, plaintiff John Evans, claims that an individual employee of the State of Wisconsin Department of Employee Trust Funds ("ETF"), Paul Braatz, violated his right to due process by allegedly providing false information about the interest rate that would apply to Evans' retirement benefits depending on the timing of his retirement. Before the court is defendant's motion for summary judgment. (Dkt. #25.) For the reasons that follow, the court will grant summary judgment in defendant's favor.

UNDISPUTED FACTS[1]

A. Background

Plaintiff John Evans is a lawyer and began working for the State of Wisconsin Department of Revenue ("DOR") in the fall of 1977. During the course of his subsequent 37-year career at DOR, Evans served in multiple positions and handled complex litigation as a senior staff attorney. In his last five years before retiring from DOR on December 1, 2014, Evans was a member of the general legal staff.

---

[1] Unless otherwise noted, the court views the following facts as undisputed and material, viewed in the light most favorable to plaintiff as the non-moving party.

Defendant Paul Braatz has worked at ETF since October 2008. Braatz started as a "trust funds specialist," which was his title during the events giving rise to this lawsuit, and currently works as a "benefit specialist," although he continues to perform essentially the same tasks in the latter position. Braatz's job duties include preparing retirement benefit estimates, death benefit estimates, forfeited service and qualified service estimates, and reviewing beneficiary designations. In this role, Braatz also meets face-to-face with Wisconsin Retirement System ("WRS") participants to review retirement benefit estimates, among other topics.

The parties submit a number of proposed findings about annuity calculations, and more specifically, the process used by the State of Wisconsin Investment Board ("SWIB") to set an effective rate of interest on annuitants' trust funds each year. The court will not review this process in detail, other than to note that the ETF Secretary typically approves the recommended effective rate for the prior calendar year in February of the following year. Consistent with that process, therefore, the 2014 effective rate was provided to the ETF Secretary on February 28, 2015. There appears no dispute that the effective rate for a year is not known until the calendar year is complete, although plaintiff points to testimony that Braatz could provide "estimates" of benefits based on *projected* effective rates. (Pl.'s Resp. to Def.'s PFOFs (dkt. #31) ¶ 23.) Moreover, in March 2014, ETF projected that the effective rate for 2014 would be 9.1 percent.

If a retiree chooses to retire in December of a given year, under WRS rules, the retiree's retirement annuity would be assigned a prorated interest rate of 4.583 percent.[2]

---

[2] The parties' explanation of why and how this rate is set is missing from their proposed findings and briefing. From publicly available WRS materials, however, for a December retiree, a 5% interest

2

However, if a retiree waits until January of the following year, there is no proration; instead, the prior year's effective rate is used to determine the annuity. In addition, retirees have 60 days from receipt of their first retirement payment to elect a different effective retirement date.

### B. Plaintiff's Retirement Decision

Evans began to consider retirement from the DOR in 2011, and during his deposition in this case, he described his efforts to acquire relevant information to inform that decision, including referencing ETF presentations and seminars, reviewing materials online, and speaking to his wife, who was also a State of Wisconsin employee, as well as speaking to colleagues about their retirement plans. Evans also had a number of retirement benefits packets and estimates prepared by ETF in several different years. In one email to a colleague, dated November 21, 2013, discussing the timing of his retirement, Evans specifically described the use of a prorated rate if one were to retire in December versus the use of the effective rate if one were to retire in January; he also described how one could change the date of retirement to the following January if the effective rate were more favorable. (Huck Decl., Ex. 1007 (dkt. #22-6).)

During the summer of 2014, Evans and his supervisor decided that Evans' retirement would be in late 2014 or early 2015. Specifically, Evans had enough vacation and sabbatical days so he could have stopped working in 2014, but remain on payroll into 2015. Nevertheless, Evans signed his retirement application on November 14, 2014,

---

rate applies but is prorated for eleven months, resulting in a rate of 4.583 percent. ETF, "When Should I retire?," https://etf.wi.gov/publications/whenshouldiretire/direct (last visited Feb. 9, 2022).

3

selecting December 1, 2014, as his retirement date; he then submitted that form to ETF on November 17, 2014. (Huck Decl., Ex. 1004 (dkt. #22-3) 2.)

Central to his claim in this lawsuit, Evans also met with defendant Braatz on November 17, for approximately 15 to 20 minutes, during which they reviewed the retirement form, discussed health insurance issues, *and* discussed the effective rate that would apply. During this conversation, Evans testified at his deposition that he asked Braatz if the effective rate for 2014 was going to be more than the prorated rate for the current year of 4.583 percent. In response, Evans testified that Braatz "kind of shrugged and moved his head and said 'no.'" (Evans Dep. (dkt. #23) 27.)[3] Even so, Evans acknowledged at his deposition that he had *no* information suggesting that Braatz intentionally misrepresented anything to Evans.

### C. Plaintiff's Retirement

Consistent with his retirement application, Evans retired as of December 1, 2014, making the effective date for his retirement annuity December 2, 2014. As such, Evans' annuity payments were calculated using a prorated rate of 4.583 percent. If Evans had retired on January 1, 2015, however, his annuity payments would have been calculated based on the 2014 effective rate, which was set on February 28, 2015, at 8.7 percent. As

---

[3] Braatz does not recall this conversation but avers in his declaration that he would not have said that the effective rate for the 2014 year would be the same as the prorated interest rate because he could not have known if that would be true at that time. Braatz further testified at his deposition that he was trained as to how to answer questions from WRS participants about whether it made sense to retire in the current year or in the next calendar year and described that process. None of this is material to defendant's pending motion for summary judgment, however, given that the court must accept Evans' testimony that Braatz told him that there would be no difference in the effective rate for 2014 and the current prorated rate.

a result, had Evans retired on January 1, 2015, his monthly annuity payment would have been approximately $300 more per month than his payment of $7,400.28. Similarly, since retirees are allowed to change their annuity effective date within 60 days after the first annuity is paid, there is no dispute that Evans had until March 3, 2015, to change the effective date of his retirement. The record also confirms that Evans understood he would have a 60-day additional grace period from receipt of his first payment to change his election *before* choosing his retirement date of December 1, 2014. (Huck Decl. (dkt. #22) ¶ 8, Ex. 1007 (email dated November 2013 from Evans explaining the 60-day period to a colleague).)

On February 28, 2015, the ETF determined the actual rate for 2014. On June 18, 2015, the ETF further issued a Notice of Final Retirement Annuity to Evans reflecting the December 2014 retirement-based rate. On September 14, 2015, Evans filed a timely appeal with ETF, claiming that he had relied on false information from Braatz and seeking redress. On January 14, 2019, a State of Wisconsin Administrative Law Judge issued her decision, finding that she lacked the equitable power to grant Evans the relief he sought.

Evans then submitted a letter to ETF Secretary Robert Conlin, who conducted an investigation before responding. In a decision dated February 5, 2019, Conlin refused to alter Evans' effective retirement date or otherwise provide requested relief, concluding that Evans failed to change his retirement date within the 60-day period, among other reasons.

OPINION

As indicated above, defendant offers several bases for summary judgment in his favor. The court concludes that summary judgment in defendant's favor is warranted for

at least two reasons. First, plaintiff has failed to make even a prima facia showing that defendant Braatz personally violated his due process rights under 28 U.S.C. § 1983, lacking evidence that Braatz acted with deliberate indifference or recklessness in answering Evans' questions about his possible retirement benefits. Second, Evans had an adequate, post-deprivation process but choose not to pursue it.

## I. Intent

### A. Requirement of Actual Knowledge or Intent

In *Daniels v. Williams*, 474 U.S. 327 (1986), the United States Supreme Court considered whether an inmate could recover for injuries he sustained based on the negligent act of a deputy sheriff in placing a pillow on jail stairs, resulting in the inmate slipping and falling. *Id.* at 328. In concluding that the due process clause is not implicated by a state official's negligent act, the Supreme Court reconsidered its holding in *Parratt v. Taylor*, 51 U.S. 527 (1981), which had concluded that 42 U.S.C. § 1983 contained no independent state-of-mind requirement and permitted claims based on negligent conduct. *Id.* The Court in *Daniels* adhered to its *Parratt* conclusion that "the language, legislative history and prior interpretations" of § 1983 did not support a finding of a separate state-of-mind-requirement, but nonetheless held that "plaintiff must still prove a violation of the underlying right; and depending on the right, merely negligent conduct may not be enough to state a claim." 414 U.S. at 330. With respect to due process, in particular, the Court concluded that the word "deprive" "connote[s] more than a mere negligent act." *Id.* Thus, since *Daniels*, "the guarantee of due process has been applied to *deliberate* decisions of government officials." *Id.* at 331 (emphasis in original).

6

In more recent cases, the Seventh Circuit has further clarified in the context of demonstrating a due process claim, that the requirement of "recklessness or deliberate indifference" requires a showing of "conduct that is criminally reckless—that is, conduct that reflects a complete indifference to risk such that we can infer the actor's knowledge or intent." *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992) (internal citation omitted); *see also Wells v. Caudill*, 967 F.3d 598, 601 (7th Cir. 2020) ("Proving her state of mind, however, was a vital step on any path to liability. Whether the claim is framed under the Cruel and Unusual Punishments Clause or the Due Process Clause, simple error, negligence, or even gross negligence is not enough."). Finally, to the extent there is any lingering question as to the elements of a *procedural* due process claim as pursued by plaintiff here, in *Aguilar v. Gaston-Camara*, 861 F.3d 626 (7th Cir. 2017), the Seventh Circuit affirmed a district court's dismissal of a procedural due process claim by a prisoner who alleged that state officials misclassified him as being on extended supervision status (as opposed to parole status) because the evidence "does not suggest more than negligence, and that is insufficient to support a due process claim." *Id.* at 633.

In the face of this caselaw, plaintiff cites to a single case, *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992), as support for his being allowed to proceed on a theory based on negligent acts by Braatz. In *Spreen*, the Seventh Circuit rejected a requirement that an employee needs to show that an employer *intentionally* made misrepresentations to prevail on his claim that he involuntarily resigned from employment. *Id.* at 113. Specifically, the *Spreen* court explained that "[t]he misleading information can be negligent or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary." *Id.* (quoting *Covington v. Dep't of*

7

*Health & Human Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984)). This explanation was provided in the context of that court's consideration of the plaintiff's due process claim, but there is nothing in the excerpted language to suggest that the Seventh Circuit was somehow revisiting the requirement announced by the United States Supreme Court in *Daniels* -- that negligent conduct was insufficient to demonstrate the elements of a due process claim -- nor could the Seventh Circuit make such a pronouncement after *Daniels*. Finally, even if there was any doubt, the Seventh Circuit's subsequent cases discussing the intent standard to demonstrate a due process claim forecloses plaintiff's reliance on *Spreen*. *E.g.*, *Wells*, 967 F.3d at 601 (rejecting negligent conduct as basis for a due process claim); *Mitchell v. Richard*, 745 F. App'x 251, 253 (7th Cir. 2018) (same); *Aguilar*, 861 F.3d at 633 (same); *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015) (same); *Weinberger v. State of Wis.*, 105 F.3d 1182, 1186–87 (7th Cir. 1997) (same); *Clifton*, 969 F.2d at 281 (same).[4]

### B. Plaintiff's Lack of Evidence

While plaintiff alleged in his original and amended complaints that Braatz "knowingly" made false representations about the effective interest rates depending on the date of retirement (Compl. (dkt. #1) ¶ 13; Am. Compl. (dkt. #7) ¶ 13), Evans acknowledged at his deposition that he had no information that Braatz intentionally

---

[4] Plaintiff also cites to *Thorsen v. Community Unit School District 300*, No. 3:20-CV-50132, 2021 WL 1784796, at *5 (N.D. Ill. May 5, 2021), for support, but in that case the language about an employer's "innocent" or "negligent" misrepresentations was also made in the context of determining whether plaintiff had adequately pleaded that he involuntarily resigned as an adverse employment action for purposes of his Title VII claim. Here, the only basis for proceeding is defendant Braatz's single, diffident physical shrug and verbal statement "no" to a single question posed by plaintiff as part of a larger discussion about his retirement options. Based on that conduct, no reasonable jury could find Braatz's response to be negligent, nor plaintiff's claimed reliance without further clarification to be reasonable.

misrepresented to Evans knowledge in his possession at the time. (Evans Dep. (dkt. #23) 30.) At most, plaintiff's evidence consists of Evans' report that Braatz "kind of shrugged and moved his head and said 'no'" in response to his question about the 2015 effective rate. (Evans Dep. (dkt. #23) 27.) A reasonable jury could not infer from such a casual, one word response that Braatz acted with criminal recklessness or deliberate indifference.

In response to defendant's proposed finding based on this deposition testimony, plaintiff similarly does not dispute that he lacks evidence of Braatz's intent, responding instead that he does not "contest this fact purely for purposes of summary judgment." (Pl.'s Resp. to Def.'s PFOFs (dkt. #34) ¶ 53.) Since one of the bases for defendant's motion is that plaintiff cannot satisfy the scienter element in his due process claim under § 1983, plaintiff's concession is dispositive. While plaintiff argues in response that proof of actual knowledge or intent is not a required element, he is simply mistaken based on the law set forth above. Having failed to present evidence from which a reasonable jury could find knowledge or intent -- even if only in the alternative should this court disagree with his view of the proof of scienter -- plaintiff has not met his burden at summary judgment, which is the "put up or shut up" phase of a case. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (internal citation and quotation marks omitted)). On the undisputed record, therefore, the court concludes that no reasonable jury could find that Braatz acted with the required intent to support plaintiff's due process claim. At most, the evidence supports a finding of negligent conduct, and the court will grant defendant's motion for summary judgment.

**II. Post-Deprivation Remedies**

Even if the court erred in concluding that plaintiff's evidence would not support a finding that Braatz acted with the necessary intent, summary judgment is also warranted because plaintiff received adequate post-deprivation remedies. "The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). While, as the court explained in its prior opinion and order on defendant's motion to dismiss, "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Id.*

Here, as described above, the State of Wisconsin provided at least three avenues for Evans to address Braatz's alleged misrepresentation. *First*, the State permits retirees a 60-day window to change their effective retirement date. As previously noted, the record establishes that Evans was aware of this protection, but failed to avail himself of it. While the court acknowledges that the effective rate for 2015 was not provided to the ETF Secretary until February 28, 2015, and therefore, plaintiff only had until March 3 to make a change, this narrow window nonetheless provided Evans with an opportunity to adjust his effective date in response to the alleged misrepresentation by Braatz.[5]

*Second*, Evans also appealed his annuity calculation to ETF, claiming that he had

---

[5] As noted previously, to the extent Evans is arguing that he could not have changed his effective retirement date or did not know that his annuity would be calculated based on the December 2014 prorated rate of 4.583 percent until June 18, 2015 -- when the ETF issued a Notice of Final Retirement Annuity to Evans -- this argument is not supported by the record. Evans was aware that by retiring in December 2014, rather than waiting until January 2015, his annuity would be calculated based on the December rate, and that the 60-day window is triggered by the first retirement annuity payment, not the formal finding of Evans' retirement annuity.

relied on false information from Braatz and seeking redress. After losing in front of the ETF board, Evans appealed to an Administrative Law Judge. While she concluded that she lacked the authority to grant the relief he requested, Evans believed the ALJ had such authority in pursuing this avenue for relief, and "federal due process protection is not a guarantee that state governments will apply their own laws accurately." *Tucker v. City of Chi.*, 907 F.3d 487, 495 (7th Cir. 2018). Moreover, dissatisfied with that result, Evans could have pursued a writ of certiorari action in Dane County Circuit Court. *See* Wis. Stat. § 40.08(12) (describing availability of certiorari action to challenge decision of the ETF board); *George v. Schwarz*, 2001 WI App 72, ¶ 12, 242 Wis. 2d 450, 626 N.W.2d 57 ("As a general rule, a certiorari court may affirm or reverse the action of the [agency] and, in limited circumstances, it may remand the case."). The fact that Evans opted not to pursue a certiorari action does not mean that he was denied post-deprivation remedies. *See Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause does not permit a litigant to disdain his opportunities under state law and then demand that the federal judiciary supply a remedy."); *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 805 (7th Cir. 2010) (explaining that a failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of process).

*Third*, having lost his administrative appeal, Evans also submitted a letter to ETF Secretary Robert Conlin, who conducted his own investigation before responding. That Conlin ultimately refused to alter Evans' effective retirement date or otherwise provide the requested relief, does not undermine the fact that this avenue provided Evans with an additional opportunity to address Braatz's alleged misrepresentation or denied due process. *E.g.*, *Tucker*, 907 F.3d at 495.

While plaintiff argues generally that these avenues were "futile," the only evidence he offers to support such a finding is because he was not granted the relief he requested. On this record, a reasonable jury could not find that these avenues for possible relief were futile or otherwise inadequate. As such, summary judgment in defendant's favor is also warranted on this basis.

ORDER

IT IS ORDERED that:

1) Defendant Paul Braatz's motion for summary judgment (dkt. #18) is GRANTED.

2) Defendant's motion to stay pretrial filing deadlines (dkt. #36) is DENIED AS MOOT.

3) The clerk's office is directed to enter judgment in defendant's favor.

Entered this 10th day of February, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge